La Jueza Asociada Señora Fiol Matta
emitió la opinión del Tribunal.
Debemos resolver si una persona que ha intentado par-ticipar activamente en un proceso adjudicativo ante una agencia debe ser reconocida como “parte” en dicho proceso cuando tiene un interés legítimo que puede ser afectado por la determinación de la agencia y, además, ha intentado ejercer su derecho a participar efectivamente durante todo el procedimiento, de forma tal que la única razón por la que no ha logrado dicha participación ha sido la propia arbitrariedad de la agencia. Resolvemos que en estas cir-cunstancias la persona es parte en el proceso.
I
Mediante sentencia sumaria parcial, el Tribunal de Pri-mera Instancia denegó el remedio de injunction preliminar y permanente solicitado por la peticionaria, Comisión de Ciudadanos al Rescate de Caimito (Comisión de Ciudada-nos o Comisión), en su demanda contra los recurridos, G.P. Real Property S.E., Gerardo I. Pérez Rivera, Junta de Pla-nificación de Puerto Rico (Junta de Planificación) y la Ad-ministración de Reglamentos y Permisos (ARPe). El Tribunal de Apelaciones confirmó ese dictamen y la Comisión de Ciudadanos solicita la revocación de la sentencia del foro apelativo. Según surgen del expediente, los hechos no con-trovertidos son los que exponemos a continuación.
El 1 de jimio de 1999, el señor Gerardo I. Pérez Rivera (el proyectista) sometió ante la Junta de Planificación una consulta de ubicación sobre el proyecto residencial Paseo del Monte, el cual consiste de 144 unidades familiares lo-calizadas en el sector Caimito de Río Piedras. El 3 de fe-brero de 2000, la Junta de Planificación notificó a las par-tes interesadas, entre éstas la Comisión de Ciudadanos, sobre la aprobación de dicha consulta. La Comisión solicitó reconsideración. Alegó que era necesario celebrar una vista *1003 pública, pero la agencia denegó su pedido, la Comisión de Ciudadanos no solicitó la revisión judicial y la aprobación de la consulta de ubicación advino final y firme.
Posteriormente, el proyectista sometió el proyecto ante ARPe y esa agencia aprobó el anteproyecto propuesto el 21 de agosto de 2000, sin notificar de esto a la Comisión de Ciudadanos. La aprobación del anteproyecto tenía vigencia de un año; antes de transcurrir ese término el proyectista solicitó una prórroga.
En una carta de 1 de agosto de 2001, pero presentada ante ARPe el 31 de julio 2001, la Comisión de Ciudadanos se opuso por derecho propio a la solicitud de prórroga pre-sentada por el proyectista en este caso. En su oposición la Comisión alegó, entre otras cosas, que tiene derecho a par-ticipar en la confección de un modelo de desarrollo que le permita a la Comunidad de Caimito superar las dificulta-des que enfrenta y a tener voz en los asuntos que afectan a esa comunidad. La Comisión de Ciudadanos notificó esta carta al proyectista. El 8 de agosto de 2001, en contesta-ción a dicha carta, ARPe le comunicó que tomaría en con-sideración sus alegaciones en el proceso adjudicativo del proyecto propuesto. Específicamente, ARPe expresó lo si-guiente:
Con relación a su carta radicada el d[í]a 31 de julio de 2001, le indicamos que hemos recibido la misma y la tendremos en consideración en cuanto al proceso adjudicativo del caso antes mencionado. Actualmente la solicitud de prórroga ha sido ob-jetada para requerir que se presente el endoso del Municipio de San Juan. (Enfasis suplido.) Apéndice del Escrito en cum-plimiento de resolución del recurrido Gerardo I. Pérez Rivera, pág. 166.(1)
*1004 Sin embargo, el 24 de agosto de 2001 la agencia conce-dió la prórroga solicitada por el proyectista sin notificar de ello a la Comisión de Ciudadanos.
El 29 de octubre de 2001, la Comisión de Ciudadanos solicitó por derecho propio que se transfirieran los dere-chos de desarrollo del proyectista y que se archivara la consideración del proyecto. Específicamente, adujo que la agencia le estaba negando su participación en el proceso adjudicativo del proyecto propuesto. Esta carta fue notifi-cada al proyectista.(2)
El 7 de marzo de 2002 ARPe aprobó el permiso de urba-nización del proyecto propuesto sin notificar a la Comisión de Ciudadanos. El 31 de enero de 2003 la Comisión de Ciudadanos nuevamente envió una carta por derecho pro-pio a ARPe en la cual solicitó que se revocara la aprobación del anteproyecto por no habérsele permitido participar en el proceso, en contravención a su derecho al debido proceso de ley. La Comisión de Ciudadanos notificó esta carta al proyectista.(3)
El 24 de noviembre de 2003 la Comisión.de Ciudadanos *1005 presentó una demanda de injunction preliminar y perma-nente en la que solicitó al Tribunal de Primera Instancia que paralizara la construcción del proyecto propuesto. Ade-más, solicitó que se revocaran los permisos otorgados por la Junta de Planificación y por ARPe, y que se le ordenara a la Junta de Planificación atender el reclamo del Depar-tamento de Educación, de manera que los terrenos en con-troversia se destinaran a la construcción de una escuela en la Comunidad de Caimito. Ese reclamo surge de una carta enviada el 15 de octubre de 2003 por el entonces Secretario del Departamento de Educación, señor César A. Rey Her-nández, a la Junta de Planificación. Indica el Secretario en su carta que los terrenos del proyecto propuesto deben ser utilizados para la ampliación de la Escuela Inés María Mendoza o para la construcción de una escuela elemental o superior, ya que la Comunidad de Caimito necesita mejo-rar sus servicios educativos y las plantas físicas donde se proveen.(4)
*1006 En su contestación a estas alegaciones, el proyectista reconvino en daños y perjuicios contra la Comisión de Ciudadanos. A su vez, el Estado Libre Asociado de Puerto Rico, en representación de la Junta de Planificación y de ARPe, solicitó que se dictara sentencia sumaria desesti-mando la acción.
El tribunal de instancia dictó sentencia sumaria parcial en la que concluyó que carecía de jurisdicción para atender la solicitud de la Comisión de Ciudadanos respecto a la consulta de ubicación aprobada por la Junta de Planificación. Resolvió, además, que la Comisión no había solicitado intervención en los procesos adjudicativos ante ARPe y que tampoco acudió al foro apelativo a impugnar los permisos otorgados por dicha agencia. Además, deter-minó que la Comisión de Ciudadanos había incurrido en incuria por haber esperado alrededor de 44 meses desde que fue aprobada la consulta de ubicación, tres años desde la aprobación del desarrollo preliminar y dos años desde la aprobación del permiso de urbanización para solicitar el injunction. Por esa razón determinó que no procedía con-cederle el remedio solicitado. Específicamente, el foro pri-mario determinó que no estaba en controversia el que la Comisión de Ciudadanos no solicitó intervención formal-mente ante ARPe ni presentó querella respecto al desarro- *1007 lio preliminar y permiso de urbanización del proyecto propuesto. Finalmente, concluyó que la alegación de la Co-misión de Ciudadanos a favor del Departamento de Educa-ción no cumple con los criterios que reconocen la capacidad de un litigante para cuestionar la actuación de una agencia administrativa a favor de los derechos de terceras personas.
De dicha determinación recurrió la Comisión de Ciuda-danos ante el Tribunal de Apelaciones. Mientras la contro-versia estaba pendiente en ese foro, ARPe aprobó el per-miso de construcción del proyecto propuesto. La aprobación del permiso no fue notificada a la Comisión de Ciudadanos. Además, la Comisión envió dos cartas a la agencia informándole su preocupación respecto a unos se-ñalamientos del Departamento de Transportación y Obras Públicas (DTOP) sobre la colindancia entre los terrenos de la Escuela Inés María Mendoza y el proyecto propuesto. (5) En urna de dichas cartas la Comisión de Ciudadanos re-clama una vez más su derecho a participar en el proceso. *1008 El 16 de junio de 2004, ARPe le contestó a la Comisión de Ciudadanos que atendería dicho asunto y le comunicaría el resultado final.
El tribunal apelativo confirmó la sentencia sumaria del tribunal de instancia. Posteriormente, denegó la moción de reconsideración presentada por la Comisión de Ciuda-danos.
El 4 de febrero de 2005 la Comisión de Ciudadanos pre-sentó el recurso de certiorari que nos ocupa. Alegó, entre otras cosas, que el Tribunal de Apelaciones erró al no aten-der su reclamo de falta de notificación de las determinacio-nes de ARPe con relación al proyecto y al confirmar la sen-tencia sumaria dictada por el tribunal de instancia. El 29 de abril de 2005 ordenamos a la parte recurrida expresar su posición.
La Junta de Planificación y ARPe comparecieron conjuntamente. Alegaron, entre otras cosas, que la Comi-sión de Ciudadanos no solicitó intervenir en el proceso ad-ministrativo ante ARPe conforme a derecho y tampoco so-licitó la revisión judicial de las determinaciones de dicha agencia respecto al proyecto.(6) Añaden que los hechos del caso no están en controversia y que, por lo tanto, el Tribunal de Apelaciones no erró al confirmar la sentencia suma-ria parcial dictada por el foro de instancia.
A su vez, el proyectista compareció para alegar, entre otras cosas, que la Comisión de Ciudadanos no presentó argumento en cuanto a la determinación de incuria del tribunal de instancia y que, al no haberse reconocido a la Comisión de Ciudadanos como parte interventora en este proceso administrativo particular, ARPe no estaba obli- *1009 gada a notificarle a ésta sus determinaciones sobre el pro-yecto propuesto.(7)
El 5 de agosto de 2005, ARPe dejó en suspenso las reso-luciones emitidas en el proyecto de referencia hasta tanto se dilucidaran las controversias de colindancia señaladas por el DTOP. ARPe no notificó de esto a la Comisión de Ciudadanos. Posteriormente, el proyectista solicitó a ARPe que dejara sin efecto dicha determinación. El 2 de noviem-bre de 2005, ARPe se reafirmó en la aprobación del ante-proyecto y otorgó el término de un año al proyectista para “levantar” el permiso de construcción. ARPe tampoco noti-ficó a la Comisión de Ciudadanos de esta decisión.
El 22 de febrero de 2006, luego de advenir en conoci-miento. de la resolución que ARPe había emitido el 2 de noviembre de 2005, la cual no se le había notificado, la Comisión de Ciudadanos presentó una moción en auxilio de jurisdicción para solicitarle a este Tribunal que parali-zara los procedimientos ante ARPe y la construcción del proyecto en controversia. E13 de marzo de 2006 expedimos el auto de certiorari, ordenamos el cese de los procedimien-tos ante ARPe y prohibimos al proyectista reiniciar los tra-bajos de construcción.
Con el beneficio de la comparecencia de ambas partes procedemos a resolver.
II
La See. 3.5 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (LPAU), 3 L.P.R.A. see. 2155, dispone que cualquier per *1010 sona que tenga un interés legítimo en un procedimiento adjudicativo ante una agencia podrá someter una solicitud por escrito, debidamente fundamentada, para que se le permita intervenir en dicho procedimiento. Este meca-nismo de intervención permite que una persona que origi-nalmente no fue parte en un procedimiento pueda defender sus intereses ante la posibilidad de que una determinación administrativa le afecte adversamente. Id. Véanse, además: San Antonio Maritime v. P.R. Cement Co., 153 D.P.R. 374, 391 (2001); Asoc. Residentes v. Montebello Dev. Corp., 138 D.P.R. 412, 420 (1995). Por esto, la solicitud de inter-vención puede presentarse en cualquier etapa del procedi-miento adjudicativo.
Al evaluar la solicitud de intervención, la agencia deberá considerar los factores siguientes:
(a) Que el interés del peticionario pueda ser afectado adver-samente por el procedimiento adjudicativo.
(b) Que no existan otros medios en derecho para que el peticiona[ri]o pueda proteger adecuadamente su interés.
(c) Que el interés del peticionario ya esté representado ade-cuadamente por las partes en el procedimiento.
(d) Que la participación del peticionario pueda ayudar ra-zonablemente a preparar un expediente más completo del procedimiento.
(e) Que la participación del peticionario pueda extender o dilatar excesivamente el procedimiento.
(f) Que el peticionario represente o sea portavoz de otros grupos o entidades de la comunidad.
(g) Que el peticionario pueda aportar información, pericia, conocimientos especializados o asesoramiento técnico que no estaría disponible de otro modo en el procedimiento. 3 L.P.R.A. sec. 2155(a)-(g).
La LPAU establece que estos criterios deben aplicarse liberalmente, de manera que se cumpla con la política pú-blica de participación ciudadana y el propósito de brindar servicios públicos de alta calidad, eficiencia, esmero y prontitud a la ciudadanía. Todo ello con el resguardo de las garantías básicas del debido proceso de ley. Id. Véase Ex- *1011 posición de Motivos de la Ley Núm. 170 de 12 de agosto de 1988 (1988 Leyes de Puerto Rico 826).
Los criterios adoptados por ARPe para evaluar las solicitudes de intervención presentadas ante esta agencia son cónsonos con los criterios legislados. En particular, la Sec. 4.02 del anterior Reglamento de Procedimientos Adjudicativos establece dichos criterios y dispone que ARPe deberá aplicarlos de manera liberal.(8) Sec. 4.02 Reglamento Núm. 3915 de 6 de mayo de 1989.
El principio de liberalidad que recoge la LPAU al regular el mecanismo de intervención responde al deber que tienen las agencias administrativas de reconocer y considerar las necesidades de los ciudadanos que pueden ser afectados por el ejercicio de los poderes administrativos delegados. Las agencias están obligadas a facilitar la participación de aquellos ciudadanos cuyos intereses se puedan afectar por la actuación administrativa, para evitar aplicar su pericia a una información que no refleje la situación real de dichos ciudadanos.
La Sec. 1.3 de la LPAU define lo que es una “parte” en un proceso adjudicativo de la siguiente manera:
... Significa toda persona o agencia autorizada por ley a quien se dirija específicamente la acción de una agencia o que sea parte en dicha acción, o que se le permita intervenir o participar en la misma, o que haya radicado una petición para la revisión o cumplimiento de una orden, o que sea designada como parte en dicho procedimiento. 3 L.P.R.A. see. 2102.
De esta definición se deduce que la designación de una persona como “parte” en un proceso administrativo no se limita al promovente, al promovido, al interventor y a *1012 quien fuera específicamente designado como tal. Lugo Rodríguez v. J.R, 150 D.P.R. 29, 43 (2000). Por el contrario, en Rivera v. Morales, 149 D.P.R. 672 (1999), determinamos que no es necesario solicitar intervención para ser conside-rado “parte” en un proceso adjudicativo. En particular, con-cluimos que una persona que sin solicitar intervención en un proceso de consulta de ubicación de un proyecto turís-tico propuesto en su comunidad, fue aceptada como tal por la Junta de Planificación, compareció a las vistas públicas a oponerse a la aprobación de la consulta y presentó una demanda de injunction alegando que se le privó de su de-recho a participar en dichas vistas, demostró su interés en intervenir y, por lo tanto, era “parte” en el proceso administrativo. Id., pág. 690.
En Lugo Rodríguez v. J.P., supra, dispusimos que para reconocer a una persona como “parte activa” del procedimiento adjudicativo, basta con que tenga un interés legítimo y haya participado activamente en el procedimiento para ser considerada una “parte” en el proceso. En dicha ocasión, definimos que el participante activo es “aqu[e]l que utiliza los remedios disponibles en aras de proteger su interés e interviene de forma tal en el proceso que resultaría injusto y arbitrario no considerarlo una ‘parte.’ ” Id., pág. 44. Además, expresamos lo siguiente:
Es cierto que no estamos en el caso de autos ante un grupo de participantes que presentaron una solicitud formal de intervención. Tampoco se trata, sin embargo, de unos partici-pantes que se limitaron a presentar un argumento oral o tes-timonio durante la vista pública. Los opositores demostraron interés en el asunto; comparecieron y declararon en la vista; sometieron sus ponencias; presentaron réplicas a la moción de reconsideración ante la Junta, y fueron notificados de los es-critos de las partes durante el trámite administrativo. Con-cluimos que los opositores son participantes activos y, por ende, “partes” en el presente caso. (Enfasis suplido.) Lugo Ro-dríguez v. J.R, supra, pág. 46.
En el presente recurso el derecho de la Comisión de Ciu- *1013 dadanos a ser “parte” en el proceso adjudicativo en contro-versia es aún más patente, pues la agencia hizo caso omiso de los múltiples intentos de la Comisión de Ciudadanos de lograr una participación efectiva en el caso y no le notificó las decisiones tomadas en el proceso, a pesar de que en dos ocasiones la agencia le comunicó a la Comisión que toma-ría en consideración sus señalamientos respecto al proyecto en controversia.(9)
Ante esta realidad, los principios que hemos pautado anteriormente nos llevan a concluir que la persona que ha expresado reiteradamente su interés en participar activamente en un proceso adjudicativo debe ser reconocida por los tribunales como “parte” en dicho proceso cuando tiene un interés legítimo que puede ser afectado por la determinación de la. agencia y, además, ha intentado ejercer su derecho a participar efectivamente durante todo el procedimiento, de forma tal que la única razón por la que no ha logrado dicha participación ha sido la propia arbitrariedad de la agencia. No reconocerle este derecho sería igualmente arbitrario, caprichoso e injusto.
En numerosas ocasiones hemos reiterado que los tribunales debemos concederle deferencia a las determinaciones administrativas y no debemos sustituir el criterio especializado de la agencia por nuestro criterio. Sin embargo, también hemos establecido que los tribunales no podemos sostener determinaciones o actuaciones administrativas tan irrazonables que constituyan un abuso de discreción. Cuando una agencia administrativa actúa arbitraria y caprichosamente, sus decisiones no merecen nuestra deferencia. San Antonio Maritime v. P.R. Cement Co., supra, págs. 396-397; Misión Ind. P.R. v. J.C.A., 145 D.P.R. 908 (1998); Rivera Concepción v. A.R.Pe., 152 D.P.R. 116 *1014 (2000); Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., 144 D.P.R. 425 (1997).
La Sec. 3.14 de la LPAU establece, entre otras cosas, que las órdenes o resoluciones finales de las agencias deberán ser notificadas a las partes del proceso administrativo. Además, especifica que dicha notificación deberá advertir el derecho de las partes a solicitar reconsideración ante la agencia o instar un recurso de revisión judicial ante el Tribunal de Apelaciones, con expresión de los términos jurisdiccionales que tienen las partes para ejercer dicho derecho. A su vez, esta sección explica que dichos términos no comenzarán a correr hasta que la agencia haya cumplido con estos requisitos. 3 L.P.R.A. see. 2164. Por eso, una vez una persona es parte en el proceso adjudicativo, tiene derecho a participar efectivamente en dicho proceso, ser notificada de las determinaciones, órdenes o resoluciones que emita la agencia y solicitar revisión judicial en igualdad de condiciones a las otras partes. Id. Véase, además, San Antonio Maritime v. P.R. Cement Co., supra, pág. 391. En particular, si la agencia no le notifica alguna determinación tomada durante el proceso adjudicativo —evitando su participación efectiva en los procesos— dicha determinación y cualquier procedimiento posterior carecerán de eficacia jurídica, ya que violan el derecho que tiene dicha parte al debido proceso de ley. Mun. de Caguas v. AT & T, 154 D.P.R. 401, 413-415 (2001). Véase, además, Asoc. Residentes v. Montebello Dev. Corp., supra, págs. 421-422.
Reiteradamente hemos establecido que por imperativo del derecho a un debido proceso de ley la notificación adecuada de una determinación administrativa resguarda el derecho de las partes a cuestionar dicha determinación en el foro judicial. IM Winner, Inc. v. Mun. de Guayanilla, 151 D.P.R. 30, 35-38 (2000); Colón Torres v. A.A.A., 143 D.P.R. 119, 124 (1997). En particular, en Mun. *1015 de Caguas v. AT & T, supra, pág. 414, expresamos lo siguiente:
Los remedios posteriores a ese dictamen provistos por regla-mentos y estatutos forman parte del debido proceso de ley y la falta de notificación adecuada puede impedir que se procuren tales remedios, enervando así las garantías del debido proceso de ley.
En protección de dicho derecho, hemos determinado que no se le pueden oponer los términos jurisdiccionales para recurrir de una determinación administrativa a una parte que no ha sido notificada de dicha determinación conforme a derecho. IM Winner, Inc. v. Mun. de Guayanilla, supra; Colón Torres v. A.A.A., supra. Además, en Carabarín et al. v. A.R.P.E., 132 D.P.R. 938, 958-959 (1993), establecimos que aunque la agencia notifique a una parte su determinación, si dicha notificación no advierte adecuadamente el foro al que se debe acudir en revisión, no se puede perjudicar a la parte por haber acudido al foro erróneo, ya que esto sería permitir que la agencia se beneficie de actuaciones administrativas que inducen a error a la parte notificada.
A través de la revisión judicial, los tribunales aseguramos que las agencias administrativas actúen de acuerdo con las facultades delegadas por ley y que cum-plan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley. La revisión judicial garantiza a los ciudadanos un foro al cual recurrir para vindicar sus derechos y obtener un remedio frente a las actuaciones arbitrarias de las agencias. Misión Ind. P.R. v. J.C.A., supra, pág. 930; Rivera Concepción v. A.R.Pe., supra, pág. 122; Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., supra, pág. 435. Conforme a los principios que hemos validado consistentemente en nuestras opiniones, si una parte no ha sido notificada de la determinación de una agencia, de su derecho a solicitar revisión judicial ante el Tribunal de Apelaciones, *1016 ni de los términos jurisdiccionales correspondientes, según lo requiere la Sec. 3.14 de la LPAU, supra, a dicha parte no se le pueden oponer estos términos y mucho menos se le puede perjudicar por no haber acudido al Tribunal de Ape-laciones para vindicar sus derechos.
¡-H ¡-H I — I
Según expusimos anteriormente, en carta de 1 de agosto de 2001, pero presentada ante ARPe el 31 de julio 2001, la Comisión de Ciudadanos se opuso por derecho propio a la solicitud de prórroga presentada por el proyectista en este caso, alegando su derecho a participar en el proceso adju-dicativo del proyecto en controversia. El 8 de agosto de 2001, antes de concederse la prórroga del anteproyecto, la agencia le comunicó a la Comisión de Ciudadanos que to-maría en consideración sus alegaciones en el proceso adju-dicativo de dicho proyecto. Sin embargo, el 24 de agosto de 2001 ARPe aprobó la prórroga del anteproyecto sin notifi-car a la peticionaria.
De igual forma, el 7 de marzo de 2002 se aprobó el per-miso de urbanización a pesar de que el 29 de octubre de 2001 la Comisión de Ciudadanos había enviado una carta por derecho propio a la agencia aduciendo que se le estaba negando su derecho a participar en el proceso adjudicativo en controversia. Además, estando el caso pendiente ante el Tribunal de Apelaciones, y a pesar de que la Comisión de Ciudadanos volvió a enviar una carta por derecho propio a la agencia el 31 de enero de 2003 alegando que la agencia le había violado su derecho a un debido proceso de ley, ARPe aprobó el permiso de construcción del proyecto pro-puesto sin notificar a la Comisión de Ciudadanos.
Posteriormente, la Comisión de Ciudadanos envió dos cartas a la agencia en el 2004 invocando, nuevamente, su derecho a un debido proceso de ley. La agencia le contestó que se comunicaría para dejarle saber el resultado final de *1017 las indicaciones hechas en una de sus cartas respecto a unos señalamientos del DTOP. Sin embargo, y aunque el caso estaba pendiente ante este Tribunal, pues habíamos ordenado a la parte recurrida expresar su posición, el 2 de noviembre de 2005 ARPe reafirmó la aprobación del ante-proyecto sin notificar a la Comisión de Ciudadanos.
El expediente del caso ante nuestra consideración re-vela claramente que la Comisión de Ciudadanos intentó ejercer su derecho a participar efectivamente durante todo el procedimiento, y que la única razón por la que no logró participar activamente en el proceso, según los criterios es-tablecidos en Lugo Rodríguez v. J.P., supra, fue la propia arbitrariedad de la agencia. Además, es un hecho no con-trovertido que la Comisión de Ciudadanos notificó en va-rias ocasiones al proyectista sobre su derecho a participar en el proceso.
La constante acción de ignorar el reclamo de participa-ción de la Comisión de Ciudadanos en los distintos inciden-tes del procedimiento de autos y la falta de notificación a la Comisión de Ciudadanos de las determinaciones de la agencia durante todo el proceso administrativo demues-tran que ARPe inhibió arbitrariamente la participación ac-tiva y eficaz de la Comisión de Ciudadanos en dicho proceso. Queda evidenciado, además, un proceder cuyo re-sultado fue confundir a la Comisión de Ciudadanos que confió en las manifestaciones de la agencia mientras ésta, contrario a sus propias comunicaciones,(10) le negaba la po-sibilidad de participar efectivamente en un proceso que afectaba a su comunidad.
La arbitrariedad de la agencia causó que el proceso ad-judicativo del proyecto residencial Paseo del Monte no con-tara con la perspectiva y el conocimiento de la Comunidad *1018 de Caimito.(11) Del expediente no surge que la agencia haya tomado acción respecto a los planteamientos que la Comi-sión hizo reiteradamente en relación con varios asuntos que entendía que la agencia debía considerar al ejercer sus facultades adjudicativas. Por el contrario, mientras la con-troversia estaba pendiente ante el Tribunal de Apelacio-nes, ARPe aprobó el permiso de construcción del proyecto propuesto sin haber analizado razonablemente estos plan-teamientos en alguna resolución de la agencia.
Al impedir la participación de la Comisión de Ciudada-nos en el proceso adjudicativo, ARPe no consideró las ne-cesidades de planificación identificadas por la comunidad y aplicó su pericia a una información que no refleja la situa-ción real de la comunidad que se vería afectada por sus determinaciones. Este proceder no sólo es arbitrario, sino que constituye también una clara violación a la política pública de participación ciudadana que la LPAU impone a dicha agencia.(12)
Resolvemos que la Comisión de Ciudadanos utilizó to-dos los mecanismos que tuvo a su alcance para proteger su interés legítimo y participar en el proceso adjudicativo del proyecto residencial Paseo del Monte que se llevó a cabo en ARPe, y que lo único que impidió dicha participación fue la arbitrariedad de la agencia. De esta forma, aunque no haya solicitado intervenir formalmente en el proceso adju-dicativo en controversia, la Comisión de Ciudadanos debió ser reconocida como parte en dicho proceso. Resolver lo contrario sería avalar los actos arbitrarios de la agencia y perpetuar una injusticia.
*1019 Habiendo establecido que la agencia no salvaguardó el derecho de la Comisión de Ciudadanos a participar efecti-vamente en el proceso y a ser notificada de las determina-ciones de la agencia, veamos entonces si ARPe salvaguardó su derecho a solicitar revisión judicial.
Como bien surge de los hechos del caso, ARPe no notificó ninguna de sus determinaciones sobre el proyecto propuesto a la Comisión de Ciudadanos. Ante esa realidad no pode-mos concluir que la agencia resguardó el derecho de la Co-misión de Ciudadanos a solicitar revisión judicial en igual-dad de condiciones a las otras partes. En particular, ARPe no cumplió con la Sec. 3.14 de la LPAU, supra, que re-quiere que se le notifique a las partes, entre otras cosas, su derecho a solicitar revisión judicial ante el Tribunal de Apelaciones y el término jurisdiccional correspondiente. Por esto, a la Comisión de Ciudadanos no se le puede opo-ner dicho término ni, mucho menos, se le puede pexjudicar por no haber acudido al Tribunal de Apelaciones. En estas circunstancias la Comisión de Ciudadanos podía acudir al Tribunal de Primera Instancia para vindicar sus derechos.
Ante esta situación, no podemos otorgar deferencia a las acciones y determinaciones de ARPe. Debemos cumplir con nuestra función revisora y concederle un remedio adecuado a la Comisión de Ciudadanos que subsane efectivamente las violaciones a su derecho a un debido proceso de ley.
Por último, debemos aclarar que en este caso no cabe hablar de incuria. El Tribunal de Primera Instancia determinó que la Comisión de Ciudadanos incurrió en in-curia por haber esperado alrededor de tres años desde la aprobación del desarrollo preliminar y dos años desde la aprobación del permiso de urbanización para presentar su demanda. No nos convence el razonamiento del tribunal. La doctrina de incuria la hemos definido como la dejadez o negligencia en el reclamo de un derecho, los cuales en conjunto con el transcurso del tiempo y otras circunstancias que causan peijuicio a la parte adversa, opera como un *1020 impedimento en una corte de equidad. Aponte v. Srio. de Hacienda, E.L.A., 125 D.P.R. 610, 618 (1990). Véanse, además: Pérez, Pellot v. J.A.S.A.P, 139 D.P.R. 588, 599 (1995); Colón Torres v. A.A.A., supra, pág. 124. La doctrina de incuria no opera automáticamente por el mero transcurso del tiempo. En Pérez, Pellot v. J.A.S.A.P, supra, págs. 599-600, señalamos lo siguiente:
Como es sabido, en dicha doctrina no basta el mero trans-curso del tiempo para impedir el ejercicio de la causa de ac-ción, sino que deben evaluarse otras circunstancias antes de decretar la desestimación del recurso instado. Circunstancias tales como “la justificación, si alguna, de la demora incurrida, el perjuicio que ésta acarrea y el efecto sobre intereses priva-dos o públicos involucrados.” Rivera v. Depto. de Servicios Sociales, supra, pág. 247. Además, cada caso deberá ser exami-nado a la luz de sus hechos y circunstancias particulares. (Citas omitidas.)
Los hechos de este caso claramente revelan que la co-munidad no incurrió en dejadez o negligencia, sino todo lo contrario. La Comisión de Ciudadanos reclamó su derecho a intervenir en el proceso adjudicativo ante ARPe. Todas las cartas que envió a la agencia fueron notificadas al pro-yectista y no fue hasta después de haber agotado los recur-sos ante la agencia que la Comisión de Ciudadanos decidió acudir al foro judicial a vindicar sus derechos. Tanto la agencia como el proyectista eran concientes del constante reclamo de la Comisión de Ciudadanos sobre su derecho a participar y ser notificada.
Se trata, pues, de unos ciudadanos que responsablemente han decidido colaborar en la planificación de su comunidad y se han esforzado por lograr la participación efectiva en un proceso administrativo que afectará directamente su entorno social, económico y ambiental. Ante esa realidad, sería irrazonable aplicar la doctrina de incuria. Como bien expresamos en Asoc. Residentes v. Montebello Dev. Corp., supra, pág. 422, y reiteramos en Mun. de Caguas v. AT & T, supra, las personas de una comuni- *1021 dad “[c]omo personas más cercanas, directamente afecta-das, tenían derecho a ser oídos; a la postre, a ellos le co-rresponde velar y defender su inmediato hábitat”.
Por los fundamentos antes expuestos, se revoca la sen-tencia del Tribunal de Apelaciones que confirma la senten-cia sumaria del Tribunal de Primera Instancia y se de-vuelve el caso a ARPe para que reabra el proceso adjudicativo para considerar los permisos que solicitó el proyectista, permitiendo la participación efectiva de la Co-misión de Ciudadanos. Sólo así ARPe podrá tomar una determinación especializada basada en ún expediente ad-ministrativo que integre el insumo real de todas las partes..

Se dictará sentencia de conformidad.

El Juez Presidente Señor Hernández Denton disintió con una opinión escrita, a la que se unió el Juez Asociado Señor Rivera Pérez.

 El 17 de abril de 2001, como parte de un proceso adjudicativo distinto al proceso del proyecto en controversia, la peticionaria había solicitado al administrador de la Administración de Reglamentos y Permisos (ARPe) que se le reconociera como parte interventora en todos los proyectos y casos pendientes o que se presentaran en esa agencia relacionados al barrio Caimito. En respuesta a esa petición, el 9 de agosto de 2001, mediante resolución, ARPe reconoció a la peticionaria como inter-ventora en los “asuntos y proyectos de desarrollos de construcción dentro de las inmediaciones del sector Caimito del Barrio Río Piedras y muy en particular al caso *1004 97-17-A-601-CPCU y otros relacionados”. Apéndice del Escrito en cumplimiento de resolución del recurrido Gerardo I. Pérez Rivera, pág. 158.

 En su carta de 29 de octubre de 2001, la Comisión de Ciudadanos al Rescate de Caimito (Comisión de Ciudadanos) expresó lo siguiente:
“Considerar proyectos con servicio expreso en ARPE y a espaldas de las comu-nidades puede ser una medida adecuada para el proponente pero no una medida justa con las comunidades de escasos recursos por negarnos la debida participación. El deber primario de la agencia pública no es solo [sic] con los desarrolladores.” (Énfasis en el original.) Apéndice del Escrito en cumplimiento de resolución del re-currido Gerardo I. Pérez Rivera, pág. 163.

 En esa comunicación la Comisión de Ciudadanos le expresó a ARPe lo si-guiente:
“Hemos reclamado a las autoridades correspondientes que esos terrenos se re-serven para la reconstrucción y ampliación de los servicios educativos que recibe la Comunidad bicentenaria de Caimito. Así se había prometido décadas antes.
“Para su conocimiento, luego de arduas gestiones, el 7 de noviembre de 2002, junto con otros líderes de la comunidad, facilitamos la información, justificación y disposición al Honorable Secretario de Educación sobre la deseabilidad de planificar y construir la misma para brindar los servicios educativos que nuestra comunidad amerita y merece.
“Sin embargo, nos ha llegado información de que la agencia que Usted dirige, alegadamente expidió un anteproyecto de construcción sin nuevamente reconocernos la intervención que nuestra organización ostenta. *1005 “Es por ello que solicitamos que se revoque la autorización por no honrarse el debido proceso. Igualmente solicitamos se extienda reconocimiento a la intención le-gislativa para utilizar para fines públicos esos terrenos.” (Enfasis suplido.) Apéndice del Escrito en cumplimiento de resolución del recurrido Gerardo I. Pérez Rivera, pág. 164.

 La carta del Secretario de Educación del Estado Libre Asociado, señor César A. Rey Hernández, informó a la Junta de Planificación lo siguiente:
“La comunidad de Caimito, a través de la Comisión de Ciudadanos al Rescate de Caimito, ha estado realizando numerosas gestiones para conseguir que se construya' una Escuela Superior en los terrenos adyacentes a la Escuela Inés María Mendoza, del Distrito Escolar de San Juan II.
“A manera de puntualización, quiero reiterar nuestro propósito e intenciones sobre este asunto, según lo consignamos el 12 de noviembre de 2002 al Hon. Ferdinand Pérez Román, Presidente de la Comisión de Desarrollo Urbano y de Vivienda de la Cámara de Representantes. En efecto, el Departamento de Educación endosa un posible proyecto de construcción en el área, en tanto en cuanto la Honorable Comisión concluya que existe una necesidad comprobada y, lógicamente, identifique los fondos necesarios para completarlo.
“En este sentido, y como asunto vinculado a este tema, es pertinente señalar que la Escuela Inés M. Mendoza fue objeto de una evaluación por parte del Arqui-tecto Rafael Reyes Navarro, de la Constructora Trópico. El Arquitecto sugirió la elaboración de un Plan de Condiciones Existentes del Plantel, y que se evalúen otras alternativas a nivel de un plan maestro que considere, desde el rediseño de estruc-turas hasta la remoción y reconstrucción de algunas facilidades. Es muy posible que la estructura actual necesite mucho más que intervenciones sencillas o remediales, *1006 pues sus arreglos podrían ser más abarcadores y complejos.

“Ante estas realidades, es imprescindible que se separen los terrenos adyacentes para uso de la escuela Inés María Mendoza. El Departamento de Educación los ne-cesita, ya sea para construcciones y ampliaciones relacionadas a la escuela actual, o para la construcción de una nueva escuela elemental e, incluso, para la construcción de una nueva escuela superior, en tanto en cuanto así se decidiera.

“La Agencia, conciente de las necesidades educativas y de mejoras a las plantas físicas existentes en la Comunidad de Caimito, solicita que la Junta de Planificación inicie los trámites necesarios para separar los mencionados terrenos para uso educativo. En consonancia con lo anterior, reiteramos nuestro propósito de unir es-fuerzos con la Comunidad de Caimito y las entidades gubernamentales pertinentes para que se consiga una asignación especial que permita el mejoramiento de los ofrecimientos educativos en este sector.” (Enfasis suplido.) Apéndice del Escrito en cumplimiento de resolución del recurrido Gerardo I. Pérez Rivera, pág. 172.

 En una carta dirigida al proyectista el 12 de mayo de 2004, con copia enviada tanto a la Junta de Planificación como a ARPe, el entonces Secretario del Departa-mento de Transportación y Obras Públicas (DTOP), señor Fernando E. Fagundo, explica su preocupación respecto al uso y acceso a carreteras estatales sin la debida aprobación del DTOP. Además, señala que la colindancia que surge del expediente en ARPe no coincide con el plano de mensura del DTOP que cubre el área de la Escuela Segunda Unidad Caimito Bajo (Escuela Inés María Mendoza). Por estos fundamen-tos, el Secretario del DTOP le indicó Gerardo I. Pérez Rivera (el proyectista) lo siguiente:
“Le informo que todo proyecto de construcción que requiera el uso de nuestras vías estatales tiene que ser sometido a la consideración de la Oficina de Control de Acceso, endoso de la Oficina Regional de Obras Públicas y efectuar una aportación por concepto de exacción de impacto en la infraestructura vial.
“A tenor con lo antes expresado, le informo que deberá de abstenerse de utilizar nuestras vías estatales para el acarreo de material y el paso de vehículos pesados hacia el referido proyecto. Además, deberá enmendar los planos para que no afecten la propiedad del ELA y a su vez someter los planos detallados del acceso autorizado por ARPE, indicando sección, perfil, colindancias y las mejoras necesarias en la in-tersección con la carretera PR-842.
“Le expreso que nuestra participación en este asunto es motivada por la afecta-ción a una propiedad del ELA y la necesidad de permiso para accesar aúna carretera estatal bajo nuestra jurisdicción.” (Énfasis suplido.) Apéndice del Escrito en cumpli-miento de resolución del recurrido Gerardo I. Pérez Rivera, pág. 861.

 Además, las agencias recurridas plantearon que la resolución de ARPe que le reconoce intervención a la Comisión de Ciudadanos en todos los casos relacionados con el sector Caimito no es parte del expediente administrativo de este caso y que fue emitida, un año después de haberse aprobado el anteproyecto. Por esa razón, alegan que este Tribunal no puede tomar en consideración esa resolución.

 Además, el proyectista plantea, al igual que las agencias recurridas, que la Comisión de Ciudadanos al Rescate de Caimito no solicitó intervención ante ARPe conforme a derecho y que la resolución de ARPe reconociéndola como parte interven-tora en todos los procesos relacionados al sector Caimito no tuvo el efecto de conver-tirla en parte interventora en el proceso adjudicativo particular del proyecto pro-puesto,,ya que dicha decisión no se le notificó al proyectista y se adoptó después de la aprobación del anteproyecto.

 Del expediente surge que el proyectista sometió el anteproyecto ante ARPe en el 2000, por lo que el Reglamento de Procedimientos Adjudicativos de ARPe apli-cable a este caso es el anterior Reglamento Núm. 3915 de 6 de mayo de 1989, y no el actual Reglamento de Procedimientos Adjudicativos de ARPe, Reglamento Núm. 6435 de 16 de abril de 2002.

8) Cartas enviadas por ARPe a la Comisión de Ciudadanos el 8 de agosto de 2001 y el 16 de junio de 2004.

 Cartas enviadas por ARPe a la Comisión de Ciudadanos el 8 de agosto de 2001 y 16 de junio de 2004.

 Por ejemplo, en su comunicación de 31 de enero de 2003, la Comisión de Ciudadanos planteó.la necesidad de servicios educativos en Caimito y le informó a la agencia las gestiones que la comunidad llevaba a cabo para dedicar el terreno objeto de la acción administrativa a ese uso y el inters del Departamento de Educación en que as fuera.

 Adviértase que no estamos adjudicando la procedencia o los méritos de los reclamos que la Comisión de Ciudadanos interesa plantear ante el foro administrativo.